UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIED VAN LINES, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 11-cv-08281 |
| ALL POINTS MOVING & STORAGE, INC., a New York corporation, | ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT FOR TRADEMARK
INFRINGEMENT, INJUNCTIVE AND OTHER RELIEF**

Plaintiff Allied Van Lines, Inc. ("Allied") for its Complaint against Defendant All Points

Moving & Storage, Inc. ("All Points") alleges as follows:

**INTRODUCTION**

1.      All Points is a former agent of Allied, one of the largest and most well-known

national moving companies.  This case arises from All Points' infringement of trademarks and

service marks belonging to Allied in violation of federal, state, and common law, and its breach

of its Agency Contract.  Allied, which operates as a national moving company through agents

like All Points, terminated All Points as an Allied agent effective June 10, 2011.  Upon

termination, All Points was required to cease using and remove all signage and other references

to Allied's corporate name, logos, trademarks, and service marks.  As recently as October 30,

2011, however, All Points still was using vehicles bearing Allied's marks and was using "hold

information" in its telephone system that expressly referenced Allied, among other illegal uses of

Allied's marks.  Allied seeks preliminary and permanent injunctive relief barring All Points from

continuing to use Allied's marks and requiring All Points to remove any existing references to

those marks, including re-painting all vehicles that currently display Allied's marks.  Allied also

seeks damages, attorneys' fees, and costs under the Lanham Act, and the Illinois Deceptive

Trade Practices Act.  Further, Allied also seeks to recover the remaining outstanding balance on

All Points' agent statements, which statements represent the settlement of the credits and debits

incurred between the parties during the term of the Agency Contract.

## PARTIES

2.      Allied is a corporation organized under the laws of the State of Delaware, with its

principal place of business located at 700 Oakmont Lane, Westmont, IL 60559.  Allied is a

national moving company that provides interstate transportation of household goods.  Allied

provides these services primarily through agents, like All Points, who contract with customers to

perform moves under the Allied brand name.

3.      All Points is a New York corporation with its principal place of business located

at 225 N. Route 303, Suite 108, Congers, NY 10920.  All Points was an Allied agent until June

10, 2011, when Allied terminated All Points for material breach of the Agency Contract.

## JURISDICTION AND VENUE

4.      Jurisdiction of this action arises under 28 U.S.C. §1331 because this action raises

one or more federal questions. Specifically, the Complaint seeks damages and injunctive relief

under the Lanham Act, 15 U.S.C. §§1114, 1125(a).  Supplemental jurisdiction over the

remaining claims is proper under 28 U.S.C. §1367.

5.      Jurisdiction of this action alternatively arises because the parties are diverse in

citizenship, the amount in controversy exceeds $75,000.00, exclusive of interests and costs; this

action does not arise under the Workmen's Compensation laws of any state; is not brought

against a common carrier or its receivers or trustees; and does not arise under 45 U.S.C. §§51-60.

6.      This Court has personal jurisdiction over All Points pursuant to the State of

Illinois' long-arm statute, 735 Ill. Comp. Stat. 5/2-209(a) and (c), because All Points contracted/conducted business in the State of Illinois, and the wrongs complained of herein arose or have caused damage in the State of Illinois.

7.     Venue is proper in the Northern District of Illinois under 28 U.S.C. §1391 because a substantial part of the events giving rise to Allied's claims occurred in this district, All Points contracted/conducted business in this district, and the wrongs complained of herein arose or have caused damage in this district.

**FACTS COMMON TO ALL COUNTS**

A.     **Allied's Protected Property.**

8.     Allied, in coordination and cooperation with its authorized, licensed agents, has been extensively engaged in the business of providing and marketing a variety of transportation services in interstate commerce since 1928 under the marks ALLIED and ALLIED VAN LINES.

9.     To protect the extensive goodwill it has built up over the years in the marks ALLIED and ALLIED VAN LINES, and its other service marks and design logos, Allied has registered many service marks on the principal register of the United States Patent and Trademark Office.  For example, Allied is the owner of United States trademark registration number 515,823 for the service marks "ALLIED VAN LINES and Design," registered on September 27, 1949 and currently in full force and effect.  This mark has been in continuous use since March 19, 1928 for services involving transportation of household goods by motor vehicles.  Other registered marks on the principal register of the United States Patent and Trademark Office owned by Allied that include the mark "ALLIED" are as follows:

    a.  "ALLIED," Registration No. 1,903,048, in use since March 19, 1928, in connection with packing, warehousing, and transportation by trucks, ships, trains, and airplanes for others;

3

b. "ALLIED and Design," Registration No. 1,583,985, in use since October 15, 1988, in connection with packing, storage, and truck transportation of the goods of others, and now incontestable under 15 U.S.C. § 1065;

c. "ALLIED DISTRIBUTION SERVICES INTERNATIONAL," Registration No. 1,737,137, in use since 1986, in connection with packing, warehousing, and transportation by trucks, ships, trains, and airplanes for others and now incontestable under 15 U.S.C. § 1065;

d. The Service Mark, Registration No. 1,957,420, in use since March 1989, in connection with packing, warehousing, and transportation by trucks, ships, trains, and airplanes of the goods of others, commonly referred to as the "The Vanishing Highway" and now incontestable under 15 U.S.C. § 1065;

e. "ALLIED VAN LINES WORLD'S NO. 1 MOVER and Design," Registration No. 858,702, in use since October 1966, in connection with packing, storage and truck transportation of the goods of others and freight forwarding services; and

f. The Service Mark, Registration No. 870,642, in use since October 1966, in connection with packing, storage, and transpiration of goods.

(True and correct copies of the United States registrations of the above-listed Allied Trademarks are attached as **Exhibit A**.)

10. Under the Trademark Act, 15 U.S.C. § 1115(a), Allied has exclusive rights to its registered Allied Trademarks and to the use of those trademarks in connection with the services covered by the registrations. In addition, the incontestable status of some of the registrations noted above serves as conclusive evidence of Allied's exclusive right to use those trademarks in commerce. 15 U.S.C. § 1115(b).

11. To distinguish itself from like service providers, Allied and its authorized licensed agents consistently use a unique trade dress involving an orange, yellow, white, and black color scheme on trucks used to provide services, advertisements, and promotional materials ("Allied's Trade Dress").

12. Allied has extensively advertised and promoted Allied's Trademarks and Allied's

4

Trade Dress throughout the United States and in several foreign countries by using Allied's Trademarks and Allied's Trade Dress in association with the above-identified services. Specifically, Allied and its licensed agents prominently use Allied's Trademarks and Allied's Trade Dress in advertising and promotion of moving and storage services through television commercials, Internet advertisements and promotions, print advertisements, shipping materials, brochures and sales contracts, shipping documents, signage appearing at the business premises of authorized Allied agents, yellow page listings, and signage appearing on trucks and other equipment used by authorized Allied agents.

13.     Allied through its nationwide use and extensive advertisement of Allied's Trademarks and Allied's Trade Dress has built up valuable goodwill in those trademarks as applied to transportation services.  Families and businesses throughout the United States have come to associate Allied's Trademarks and Allied's Trade Dress with quality transportation of household goods and other commodities.  As a result, the public and members of the trade have come to know, recognize, and identify the transportation services and similar services bearing Allied's Trademarks and Allied's Trade Dress as services of Allied.

14.     Allied's Trademarks and Allied's Trade Dress are famous and well known throughout the United States, and within the meaning of 15 U.S.C. § 1125(c), having been used nationally for decades.

15.     As a result of the publicity, promotion, advertising, and marketing efforts of Allied, the general public has become familiar with Allied and its official logo and Allied's Trademarks and Allied's Trade Dress have acquired a secondary meaning.

16.     Allied also has licensed certain companies to act as an agent of Allied, and has permitted those agents to used Allied's Trademarks and Allied's Trade Dress on their vehicles

and other products.  An agent's usage of Allied's Trademarks and Allied's Trade Dress is limited specifically to the terms of that agent's agency contract with Allied.

**B.**     **Allied's Agency Contract with All Points**

17.     On or about August 6, 2010, Allied executed an Agency Contract with All Points, under which Allied was referred to as the "CARRIER" and All Points was referred to as the "AGENT."  (A true and correct copy of the Agency Contract is attached as **Exhibit B**.)  The Agency Contract had an effective date of May 1, 2010.  (*Id.*)

**1.**     **Trademark Usage.**

18.     In the Agency Contract, Allied granted All Points a limited license to use Allied's Trademarks and Allied's Trade Dress:

> Trademarks.   CARRIER grants AGENT, for the term of this Agreement and not thereafter, limited license to use CARRIER's corporate name and registered service marks (trademark) in connection with AGENT's own business name, in advertising CARRIER's service, subject to CARRIER's prior approval. Nothing contained herein shall authorize AGENT to use CARRIER's name in, as, or as a part of AGENT's own corporate, trade or fictitious name.  All names, trade names, trademarks, service marks, slogans, color combinations, designs, logos, copyrights and patents, etc., now or hereafter owned or used by CARRIER, are, as between CARRIER and AGENT, solely and exclusively owned by CARRIER, and neither are, nor ever will become, the property of AGENT.

(*Id.* ¶ 3.08(A).)

**2.**     **Interstate Authority.**

19.     The Agency Contract further provides that All Points will comply "in all respects with CARRIER's current Agent Authority Policy, as set forth in Exhibit 2.05."  (*Id.* ¶ 2.05.)

20.     Exhibit 2.05 provides in relevant part:

**I.**     **Motor Carrier Household Goods:**

AGENT may not, directly or indirectly, hold authority to transport

household goods or operate as a carrier of household goods in interstate or foreign commerce.

(Exhibit 2.05 to Exhibit B, at 31.)

3. **Agent Statements.**

21. The Agency Contract further provides that All Points will "comply with [Allied's] rules and regulations" (hereinafter, "Allied Rule __"). (Exhibit B ¶ 2.04.)

22. Allied Rule 20 provides the mechanism by which Allied and All Points would account for and pay debits and credits between the two companies. (Allied Rule 20, attached as **Exhibit C**.)

23. Specifically, Allied issued to All Points twice each month an agent statement, which sets forth the debits and credits on All Points' account. (*Id.* ¶ (A).)

24. If there is a debit balance on the account, All Points was required to pay the balance within 14 days of the receiving the agent statement. (*Id.* ¶ (B)(2)(a).)

25. Allied Rule 21 governs past due accounts. Paragraph (H) of Rule 21 provides:

Breach of Contract

Failure of an agent to make payment of past-due account within 90 days after receipt of notice that the agent has been placed on the C.O.D. list as provided in this Rule 21 will be deemed a breach of contract.

If agent fails or refuses to pay the amount of the past-due account by the end of the 90-day period after said notice, said contract shall be automatically cancelled effective 30 days after notice in writing to agent.

(Allied Rule 21, attached as **Exhibit D**.)

4. **Termination.**

26. Paragraph 3.11 of the Agency Contract sets forth the bases on which either party may terminate the contract:

Term and Termination. The term of this Agreement shall be as set forth on the first page of this Agreement, and it shall continue thereafter until terminated by either party with or without cause upon 3 months' written notice to the other to be effective on or after the date on which the Initial Term of this Agreement expires; . . . During the term hereof, either party may terminate this Agreement for a material breach upon 10 days' notice to the other if and only if the breaching party, for a period of 30 days after notice so to do shall fail or refuse to cure or remedy any breach of this Agreement claimed in such notice . . .

(Exhibit B at 21.)

27.     Paragraph 3.08(C) of the Agency Contract provides that All Points may not continue to use Allied's Trademarks and Allied's Trade Dress after termination and provides for liquidated damages in the amount of $100 per day for any violation of this paragraph:

Termination of Trademark Use. Upon termination of this Agreement AGENT will no longer use the said names, trade names, trademarks, service marks, slogans, color combinations, designs, logos, copyrights and patents, etc., in any manner or in any capacity whatsoever. Upon AGENT's failure to fully comply with the provisions of this paragraph, AGENT shall pay CARRIER the sum of $100.00 per day for each day during which such failure continues, beginning with the 31st day following termination of this Agreement, the aforesaid sum being agreed upon by CARRIER and AGENT as the amount by which CARRIER has been damaged by AGENT's violation of this subparagraph (C), it being impossible to ascertain or prove the actual damage sustained. This provision for liquidated damages shall in no way be construed as a waiver of CARRIER's right to obtain injunctive relief against AGENT's non-compliance with this provision and AGENT hereby agrees that its non-compliance with this provision shall cause CARRIER and CARRIER's other agents irreparable harm.

(Exhibit B ¶ 3.08(C).)

28.     Allied Rule 32 also provides that All Points must cease using Allied's Trademarks and Allied's Trade Dress within 30 days of the effective date of termination. (Allied Rule 32, attached as **Exhibit E**.)

29.     Further, All Points remains liable for and is obligated to pay after termination any

outstanding balance of "each agent statement," "including without limitation the service charge, additional service charge, assessments under the Loss Insurance Program and the service charge on past-due accounts of no-longer agents . . . shall continue to apply."  (Exhibit E at 32(D)(1).)

30.    The Agency Contract provides that it "is made and entered into at Westmont, Illinois, and shall be interpreted in accord with the laws of Illinois, but not including its principles of conflicts of law."  (*Id.* at 24.)

## C.    **All Point's Breach of Contract and Termination.**

31.    On April 20, 2011, Allied notified All Points that its agent statement had an outstanding balance.  Pursuant to Allied Rule 20, Allied requested payment.

32.    Several days later, on April 27, 2011, Allied notified All Points that All Points had materially breached the Agency Contract by holding its own interstate authority to transport household goods, in violation of the Agent Authority Policy.  Allied provided All Points with 30 days to cure this material breach or be subject to termination of its Agency Contract.  (A true and correct copy of the April 27, 2011 letter is attached hereto as **Exhibit F**.)

33.    All Points failed to pay the outstanding balance on its agent statement, thereby materially breaching the Agent Contract.

34.    All Points failed to remedy the material breach described in Allied's April 27, 2011 letter within 30 days.

35.    Accordingly, on May 27, 2011, Allied sent All Points a Notice of Termination of Agency Contract terminating the Agency Contract due to All Points' failure to remedy the material breaches described in the April 27, 2011 letter.  Pursuant to the Agency Contract, the termination was effective on June 10, 2011.  (A true and correct copy of the Notice of Termination of Agency Contract is attached hereto as **Exhibit G**.)

36.     Among other things, the Notice of Termination of Agency Contract required All

Points to:

- Remove all Allied signage and identification from its facilities, vehicles, and internet website and to discontinue the use of Allied's Trademarks and Allied's Trade Dress within 30 days of the effective date of termination; and

- Pay the outstanding balance on its Agent Statement, which was $28,440.00 on May 27, 2011.

(*See* Exhibit G.)

**D.     All Points' Continued Use of Allied's Trademarks and Allied's Trade Dress, and Its Failure to Pay Its Agent Statement Balance.**

37.     Pursuant to the Agency Contract and Notice of Termination of Agency Contract,

All Points was to cease using Allied's Trademarks and Allied's Trade Dress no later than July

10, 2011.  (*See* Exhibits B and G.)

38.     On July 14, 2011, however, All Points entered into a contract with Charles

Cottone for the shipment and storage of Mr. Cottone's property.  All Points' contract with Mr.

Cottone identified the carrier as "Allied Van Lines, Inc."  (A true and correct copy of the

contract is attached hereto as **Exhibit H**.)  On information and belief, Mr. Cottone believed he

was entering into a contract with an Allied sponsored affiliate due to All Points' use of Allied's

Trademarks.

39.     In addition, All Points used the email domain "allpointsallied.com" in

correspondence with Mr. Cottone, thereby identifying itself as affiliated with Allied.  (A true and

correct copy of email correspondence between All Points and Mr. Cottone is attached hereto as

**Exhibit I**.)

40.     Moreover, on or about August 3, 2011, an Allied representative photographed

several All Points vehicles that still displayed Allied's Trademarks and Allied's Trade Dress.

These vehicles should have been painted to remove Allied's Trademarks and Allied's Trade

Dress by July 10, 2011. (A true and correct copy of the August 3, 2011 photographs is attached as **Exhibit J**.)

41.     On or about October 5, 2011, Charste D. Daugherty, a customer service supervisor for SIRVA, Inc., Allied's parent company, called All Points to inquire about a move that All Points allegedly had performed. During the call, Ms. Daugherty was placed on hold momentarily. While on hold, she discovered that All Points was continuing to play "hold information" that identified All Points as affiliated with Allied and expressly used Allied's corporate name.

42.     Further, on August 12, 2011, All Points still was using Allied's Trademarks and Allied's Trade Dress on its website. (A true and correct copy of All Points' website as of August 12, 2011 is attached as **Exhibit K**.)

43.     On September 2, 2011, Allied notified All Points of its continued unauthorized use of Allied's Trademarks and Allied's Trade Dress, demanding that All Points cease using Allied's Trademarks and Allied's Trade Dress and pay the contractually mandated liquidated damages in the amount of $5,500, with an additional $100 per day for future non-compliance. (A true and correct copy of the September 2, 2011 letter is attached hereto as **Exhibit L**.)

44.     All Points ignored that demand.

45.     Indeed, as of October 30, 2011, All Points continues to use vehicles displaying Allied's Trademarks and Allied's Trade Dress. (A true and correct copy of the October 30, 2011 photographs is attached as **Exhibit M**.)

46.     As of November 18, 2011, All Points also is continuing to use Allied's Trademarks and Allied's Trade Dress on its website. (A true and correct copy of All Points' website as of November 18, 2011 is attached as **Exhibit N**.)

11

47.    As of November 18, 2011, All Points has failed to pay the amounts due on its agent statement.

### COUNT I
*(Infringement of Registered Trademarks Under §32 of the Lanham Act)*

48.    Allied restates and realleges paragraphs 1 through 47 as if fully set forth herein.

49.    Allied's Trademarks and Allied's Trade Dress are valid, subsisting and in full force and effect.

50.    Pursuant to 15 U.S.C. §1057(b) and 15 U.S.C. §1065, registration of Allied's Trademarks and Allied's Trade Dress is *prima facie* evidence of the validity of such registrations and of Allied's ownership of the marks.

51.    The registrations also provide the exclusive right to Allied to use said marks in commerce in connection with the products and/or services identified on the principal register.

52.    Furthermore, pursuant to 15 U.S.C. § 1065, many of Allied's Trademarks and Allied's Trade Dress are incontestable.

53.    The incontestability of the marks is conclusive evidence of the validity of the marks, Allied's ownership of the marks and Allied's exclusive right to use the marks in commerce. 15 U.S.C. § 1115(b).

54.    All Points' use of Allied's Trademarks and Allied's Trade Dress is without authorization. As such, All Points has offered for sale, sold, advertised, and promoted moving and storage services in connection with Allied's Trademarks and Allied's Trade Dress in commerce and, unless enjoined, will continue to offer for sale, sell, advertise, and promote moving and storage services in connection with Allied's Trademarks and Allied's Trade Dress.

55.    All Points has used Allied's Trademarks and Allied's Trade Dress in connection with moving and storage services that are similar to what Allied offers.

56. The general public is the intended end user of All Points' moving and storage services. Such individuals include the target market for Allied.

57. All Points' conduct has caused, and will likely continue to cause, confusion, mistake, and deception among the general consuming public as to the origin and quality of the All Points' moving and storage services.

58. All Points' conduct constitutes infringement of Allied's Trademarks and Allied's Trade Dress in violation of Allied's rights under Section 32 of the Lanham Act, 15 U.S.C. §1114(1).

59. On information and belief, All Points knows that the use of Allied's Trademarks and Allied's Trade Dress infringes on the Allied's registrations, and that such use is likely to confuse the public.

60. On information and belief, All Points has used Allied's Trademarks and Allied's Trade Dress intentionally for the purpose of confusing and deceiving consumers. Even after receiving a cease and desist letter from Allied, All Points continued to use Allied's Trademarks and Allied's Trade Dress in connection with moving and storage services. By these actions, All Points demonstrated its unlawful intention to infringe upon Allied's Trademarks and Allied's Trade Dress.

61. All Points use of Allied's Trademarks and Allied's Trade Dress has damaged Allied's goodwill in its trademarks, prestige, and reputation of its moving and storage services, and, unless permanently enjoined, will continue to damage Allied's goodwill in its trademarks, its prestige, and reputation. The potential harm to Allied's goodwill, prestige, and reputation is both vast and irreparable.

62. Allied has no adequate remedy at law.

63.   In offering for sale, selling, advertising, and/or promoting moving and storage services in connection the Allied's Trademarks and Allied's Trade Dress, All Points has acted willfully, in bad faith and in reckless disregard of Allied's rights.

64.   To the extent that All Points derives a profit from offering for sale, selling, advertising, and/or promoting moving and storage services in connection the Allied's Trademarks and Allied's Trade Dress, All Points will be unjustly enriched at Allied's expense. Allied is therefore entitled to an accounting and disgorgement of all profits gained by All Points from its offering for sale, selling, advertising, and/or promoting moving and storage services in connection the Allied's Trademarks and Allied's Trade Dress.

WHEREFORE, Allied Van Lines, Inc. requests that judgment be entered in its favor and against All Points Moving & Storage, Inc., and the Court award and grant Allied Van Lines, Inc. the following:

(a)   An award of statutory damages in an amount to be determined at trial as a result of All Points' unauthorized use of Allied's Trademarks and Allied's Trade Dress, pursuant to 15 U.S.C. § 1114;

(b)   A preliminary and permanent injunction enjoining All Points from any continued use and misuse of Allied's Trademarks and Allied's Trade Dress, including requiring All Points to re-paint all vehicles that currently display Allied's Trademarks and Allied's Trade Dress;

(c)   Pre- and post-judgment interest as allowed by applicable law;

(d)   Attorneys' fees and costs of this action; and

(e)   All other relief the Court deems just and proper.

## COUNT II
*(False Designation of Origin Under §43(a) of the Lanham Act)*

65.   Allied restates and realleges paragraphs 1 through 47 as if fully set forth herein.

66.   For over 75 years, Allied has used Allied's Trademarks and Allied's Trade Dress as an identifier of source. As a result of the tremendous secondary meaning Allied has created,

14

Allied's Trademarks and Allied's Trade Dress are strong marks entitled to the broadest scope of protection.

67.     All Points use of Allied's Trademarks and Allied's Trade Dress is a false and misleading representation that Allied sponsors or approves of All Points' services, including its moving and storage services.

68.     All Points' use of Allied's Trademarks and Allied's Trade Dress for services not affiliated with Allied is also likely to cause consumer confusion or mistake or deceive the public about the sponsorship, approval, design, and quality of All Points' moving and storage services.

69.     All Points unauthorized use of Allied's Trademarks and Allied's Trade Dress in connection with moving and storage services constitutes a use in commerce of a false designation of origin, as All Points use of Allied's Trademarks and Allied's Trade Dress is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of All Points with Allied, or as to the origin, sponsorship, or approval of All Points' services, or commercial activities by Allied.

70.     Consumers are likely to be misled into believing that All Points is associated with Allied and that All Points moving and storage services are Allied moving and storage services, or are sponsored by, licensed by, or otherwise approved by Allied.

71.     On information and belief, All Points was and is on actual and constructive notice of Allied's rights in Allied's Trademarks and Allied's Trade Dress.  All Points' use of such marks is willful and in bad faith, and was done with the full knowledge of the goodwill and the reputation associated with Allied and with full knowledge that All Points has no right, license, or authority to use Allied's Trademarks and Allied's Trade Dress or any other marks or trade dress confusingly similar thereto.

15

72.     All Points' acts are intended to reap the benefit of the goodwill that Allied has created in Allied's Trademarks and Allied's Trade Dress and constitute false designation of origin and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

73.     All Points' conduct has caused and is causing immediate and irreparable injury to Allied and will continue to both damage Allied and to deceive the public unless enjoined by this Court.

74.     Allied has no adequate remedy at law.

WHEREFORE, Allied Van Lines, Inc. requests that judgment be entered in its favor and against All Points Moving & Storage, Inc., and the Court award and grant Allied Van Lines, Inc. the following:

(a)     An amount that will compensate Allied for All Points' violations of § 43(a) of the Lanham Act;

(b)     A preliminary and permanent injunction enjoining All Points from any continued use and misuse of Allied's Trademarks and Allied's Trade Dress, including requiring All Points to re-paint all vehicles that currently display Allied's Trademarks and Allied's Trade Dress;

(c)     Pre- and post-judgment interest as allowed by applicable law;

(d)     Attorneys' fees and costs of this action; and

(e)     All other relief the Court deems just and proper.

## COUNT III
*(Violation of Illinois Deceptive Trade Practices Act – 815 ILCS 510/1 et seq.)*

75.     Allied restates and realleges paragraphs 1 through 47 as if fully set forth herein.

76.     Allied is the registered owner of the incontestable Allied's Trademarks and Allied's Trade Dress.

77.     All Points' actions constitute unfair competition and unfair or deceptive acts or

16

practices under Illinois law, 815 ILCS 510/1, *et seq.* All Points' infringement of Allied's Trademarks and Allied's Trade Dress has caused, and unless enjoined will continue to cause, confusion or misunderstanding among the consuming public as to the affiliation, connection or association between All Points and Allied and/or as to the sponsorship or approval by Allied of All Points moving and storage services.

78.     On information and belief, All Points, by its conduct, intended to cause the consuming public to rely upon its infringement of Allied's Trademarks and Allied's Trade Dress, in order to cause confusion or misunderstanding as to the affiliation, connection or association between All Points and Allied and/or as to the sponsorship or approval by Allied of All Points' moving and storage services.

79.     Allied and the public have been and are likely to continue to be damaged as a result of All Points' deceptive acts or practices. Unless enjoined by this Court, All Points will continue the foregoing unfair competition and unfair or deceptive acts or practices, thereby confusing the public and causing Allied immediate and irreparable damage.

80.     Allied has no adequate remedy at law.

81.     Allied will be irreparably injured because of its loss of goodwill and reputation stemming from All Points' refusal to immediately cease and desist from its use of the Allied's Trademarks and Allied's Trade Dress.

WHEREFORE, Allied Van Lines, Inc. requests that judgment be entered in its favor and against All Points Moving & Storage, Inc., and the Court award and grant Allied Van Lines, Inc. the following:

> (a)     A preliminary and permanent injunction enjoining All Points from any continued use and misuse of Allied's Trademarks and Allied's Trade Dress, including requiring All Points to re-paint all vehicles that currently display Allied's Trademarks and Allied's Trade Dress;

(c)     Attorneys' fees and costs of this action; and

(f)     All other relief the Court deems just and proper.

## COUNT IV
### *(Breach of Contract)*

82.     Allied restates and realleges paragraphs 1 through 47 as if fully set forth herein.

83.     The "Agency Contract" between Allied and All Points is a valid and enforceable contract.

84.     All Points breached the Agency Contract by continuing to use Allied's Trademarks and Allied's Trade Dress after July 10, 2011.

85.     All Points materially breached the Agency Contract by failing to pay the outstanding balance on its agent statement.

86.     All Points materially breached the Agency Contract by holding its own interstate authority to transport household goods.

87.     Allied has performed all of its material obligations under the Agency Contract.

88.     As a direct and proximate result of All Point's unauthorized use of Allied's Trademarks and Allied's Trade Dress and pursuant to the liquidated damages provision of the Agency Contract, Allied is entitled to recover liquidated damages in the amount of $100 per day for each day that All Points has and continues to improperly use Allied's Trademarks and Allied's Trade Dress.

89.     As a direct and proximate result of All Point's failure to pay the outstanding balance on its agent statement, Allied has been damaged in the amount of outstanding amount on All Points' agent statement.

90.     As a direct and proximate result of All Point's other breaches of the Agency Contract, Allied has been damaged in an additional amount that will be proven at trial.

91.     Allied will continue to suffer damages as a direct and proximate result of All Points' breaches.

WHEREFORE, Allied Van Lines, Inc. requests that judgment be entered in its favor and against All Points Moving & Storage, Inc., and the Court award and grant Allied Van Lines, Inc. the following:

> (a)     An award of liquidated damages for All Points' continued use of Allied's Trademarks and Allied's Trade Dress;
>
> (b)     An award of all amounts due on All Points' agent statement;
>
> (c)     An amount that will compensate Allied for All Points' other breaches of the Agency Contract;
>
> (c)     Pre- and post-judgment interest as allowed by applicable law;
>
> (d)     Attorneys' fees and costs of this action; and
>
> (e)     All other relief the Court deems just and proper.

                         Respectfully submitted,


                         ALLIED VANS LINE, INC.


                         By:  s/ Andrew M. Spangler, Jr.
                              One of its attorneys

                         Andrew M. Spangler, Jr.
                         Matthew F. Singer
                         Jessica L. Heckinger
                         BARACK FERRAZZANO
                              KIRSCHBAUM & NAGELBERG LLP
                         200 W. Madison St.
                         Ste. 3900
                         Chicago, IL 60606
                         (312) 984-3100
                         (312) 984-3150
                         andrew.spangler@bfkn.com
                         matthew.singer@bfkn.com
                         jessica.heckinger@bfkn.com